Hanoi Acosta # 87406-008
Name and Prisoner/Booking Number

USP Lewisburg
Place of Confinement

P.O. Box 1000
Mailing Address

Lewisburg, PA 17837
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

FILED ✓        LODGED
RECEIVED        COPY

7        APR 2 3 2018        7

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

# CV 18-0216 TUC RM PSOT

HANOI BARBARO ACOSTA
(Full Name of Plaintiff)        Plaintiff,

vs.

CASE NO._____
(To be supplied by the Clerk)

(1) J.T. SHARTLE, WARDEN USP TUCSON,
(Full Name of Defendant)

(2) BRILO, ASSOCIATE WARDEN

(3) A. GALLION, SIS

(4) J. CIUFO, DHO
        Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

Additional Defendants listed in attached Complaint p.1

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

JURY TRIAL DEMANDED

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☒ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971);
   ☒ Other: 42 U.S.C. § 1985 (3).

2.   Institution/city where violation occurred: United States Penitentiary-Tucson, Tucson, Arizona.

Revised 5/1/2013        1

**550/555**

## B.  DEFENDANTS

1.   Name of first Defendant: _J.T. SHARTLE_____.  The first Defendant is employed as: _Complex Warden_____ at _USP Tucson_____.
         (Position and Title)                                      (Institution)

2.   Name of second Defendant: _BRILO_____.  The second Defendant is employed as: as: _Associate Warden_____ at _USP Tucson_____.
         (Position and Title)                                      (Institution)

3.   Name of third Defendant: _A. GALLION_____.  The third Defendant is employed as: _Special Investigations Supervisor_____ at _USP Tucson_____.
         (Position and Title)                                      (Institution)

4.   Name of fourth Defendant: _J. CIUFO_____.  The fourth Defendant is employed as: _Disciplinary Hearing Officer_____ at _USP Tucson_____.
         (Position and Title)                                      (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1.   Have you filed any other lawsuits while you were a prisoner?   ☒ Yes       ☐ No

2.   If yes, how many lawsuits have you filed?   _2_.   Describe the previous lawsuits:

   a.   First prior lawsuit:
         1.   Parties: _Acosta_____ v. _US Marshal Service_____
         2.   Court and case number: _?_____.
         3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Dismissed_____

   b.   Second prior lawsuit:
         1.   Parties: _Acosta_____ v. _Arpaio_____
         2.   Court and case number: _?_____.
         3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _lost on_ _appeal._____

   c.   Third prior lawsuit:
         1.   Parties: _____ v. _____
         2.   Court and case number: _____.
         3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: _Plaintiff was denied procedural due process in violation of the Fifth Amendment to the United States Constitution_.

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☒ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
   _I am currently being illegally held in confinement at the Special Management Unit ("SMU"), in Lewisburg, Pennsylvania. Due to the fabrication and false submission of false incident reports by the Defendants, who collectively and in concert conspired to; infract, confine to SMU, and transfer me to a facility that mirrors the SMU_

   _(See Complaint attached)_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   _My Fifth Amendment right to due process have been violated and I am still illegally being held in confinement in the SMU in Lewisburg, PA._

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## COUNT II

1. State the constitutional or other federal civil right that was violated: _Defendants breached their duty to protect Plaintiff in violation of the Fifth Amendment to the United States Constitution._

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: _Breach of duty to protect_

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   _Warden Shartle and Brito violated my Fifth Amendment rights as well when they allowed their staff to conspire against me and keep me confined under false pretenses, even after I complained to them about the situation._

   _(See, Complaint attached)_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   _My Fifth Amendment right to due process have been violated and I am still illegally being held in confinement in the SMU in Lewisburg, PA._

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _I wrote a complaint to the Office of the Inspector General ("OIG") which is sufficient to exhaust._

4

## COUNT III

1. State the constitutional or other federal civil right that was violated: _Plaintiff was denied adequate medical care with deliberate indifference, in violation of the Eighth Amendment to the United States Constitution_.

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   _Defendant Shartle, Warden and A. Gallion denied adequate medical assistance with deliberate indifference. I was sick from food poisoning and I asked Gallion to call medical and he told me I had "nothing coming" and did not to protect my health because we were already on bad terms by him conspiring to confine me to SHU on false charges. I told the warden (Shartle) to look into the matter because everyone was sick and medical did not attend to me. It wasn't until approx. weeks later that someone came to tell me there was a food poison out break. But no tests or analysis were ever conducted. I believe that that was because like Gallion said, I had nothing coming and that was part of my punishment for being a sex offender at USP tucson._

   _( See Complaint attached)_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   _I had 102.2 degree fever, vomiting blood and diarrhea, stomach cramps, and sweat bouts and dehydrations. I was delirious for three days. I thought I was going to die._

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count III?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E. REQUEST FOR RELIEF

State the relief you are seeking:

I ask for immediate release from the SMU to general population. A declaration that Plaintiff's rights were violated by the Defendants, $330,000.00 in monetary compensation at a rate of $1000.00 a day for the false confinement, and any other relief the Court deems just and proper

( See Complaint Attached )

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   April 18, 2018
              DATE

Hanss Acosta
SIGNATURE OF PLAINTIFF

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HANOI BARBARO ACOSTA,<br>    Plaintiff, | |
| V. | Case No. _____<br><div align="right">(to be supplied by the Clerk)</div> |
| J.T. SHARTLE, WARDEN, sued in<br>his individual capacity; BRILO,<br>ASSOCIATE WARDEN, sued in his<br>individual capacity; A. GALLION,<br>STS, sued in his individual capacity;<br>J. CIUFO, DHO, sued in her individual<br>capacity; D. MADRID, SIS, sued in<br>her individual capacity; and D. MILLER,<br>HEARING ADMINISTRATOR, sued in his<br>individual capacity,<br>    Defendant(s). | CIVIL RIGHTS COMPLAINT BY<br>A PRISONER |

JURY TRIAL DEMANDED

COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

## I. JURISDICTION

1. Plaintiff brings this lawsuit pursuant to 28 U.S.C. § 1331;
Bivens v. Six Unknown Federal Narcotic Agents, 403 U.S. 388 (1971);
42 U.S.C. § 1985 (3);

Plaintiff also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201.

## II. VENUE

2. The District of Arizona is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III. PARTIES

3. Plaintiff Hanai Barbaro Acosta ("Acosta") was at all times relevant to this action a prisoner incarcerated at the United States Penitentiary-Tucson, which is located in the District of Arizona.

4. Defendant J.T. Shartle ("Shartle") was at all times relevant to this action the Complex Warden at the United States Penitentiary ("USP") Tucson and was acting under the color of federal law. The warden is responsible for ensuring the safety and well-being of prisoners under his supervision. By prison policy an inmate is not to be confined in segregation unless he poses a serious threat. See, C.F.R. § 541.22(b). He is sued in his individual capacity.

5. Defendant Brilo ("Brilo") was at all times relevant to this action the Associate Warden at USP Tucson and was acting under the color of federal law. He was responsible to ensure the safety of Acosta. He is sued in his individual capacity.

6. Defendant A. Gallion ("Gallion") was at all times relevant to this action a Special Investigations Supervisor at USP Tucson, and was acting under the color of federal law. He was responsible for ensuring the safety of Acosta. He is sued in his individual capacity.

7. Defendant J. Ciufo ("Ciufo") was at all times relevant to this action a Disciplinary Hearing Officer at USP Tucson, and was acting under the color of federal law. She was responsible for giving Acosta a fair and unbiased hearing of the charges made against him. She is sued in her individual capacity.

8. Defendant D. Madrid ("Madrid") was at all times relevant to this action a Special Investigations Supervisor at USP Tucson, and was acting under the color of federal law. She was responsible for ensuring the safety of Acosta. She is sued in her individual capacity.

9. Defendant D. Miller ("Miller") was at all times relevant to this action a Hearing Administrator at BOP's Western Regional Office in Stockton, California, and was acting under the color of federal law. He was responsible for giving Acosta a fair and unbiased Special Management Units ("SMU") referral hearing before Acosta could be placed in the SMU. See, Program Statement P5217.02. He is sued in his individual capacity.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Acosta exhausted his administrative remedies as required by the Federal Bureau of Prisons ("BOP") policy, and the incident report that violated his due process was expunged. Acosta also filed a complaint with the Office of the Inspector General ("OIG").

## V. STATEMENT OF FACTS

11. On or about March 15, 2017, Acosta arrived at USP Tucson.

12. On or about April 12, 2017, Acosta was notified by Lieutenant T. Urff that he had been charged with the use of the mail for abuses other than criminal activity which circumvents mail monitoring procedures (Incident Report 2974220), by Defendant D. Madrid ("Madrid"). A code that Acosta's conduct did not violate.

13. Acosta told the lieutenant that he was setting up an inmate pen pal page and that he did not know it was against the rules.

14. Lieutenant Driver was present. He told Acosta that using a pen pal site was not against BOP rules, and that he was in fact allowed to have a pen pal page. Driver told Acosta to call him as a witness.

15. On or about April 13, 2017, Counselor J. Santa-Cruz advised Acosta of his rights at the DHO hearing. Acosta requested

Case Manager M. Diaz as a staff rep and Lieutenant Driver as a witness.

16. On or about May 4, 2017, Defendant J. Ciufo ("Ciufo"), con-ducted a hearing of Incident Report ("I/R") No. 2974220. Acosta's staff rep and witness were not available, however, Acosta waiv-ed them and elected to proceed. In Acosta's defense he proffered that he could not be convicted of the I/R because he was just hiring a company to create a pen pal advertisement. He pointed out that that was not against BoP policy, and that Madrid does not cite to what "Bureau Policy" Acosta was in direct violation of. Ciufo stated that Acosta was a "low life pimp" and a "sex offender" and "shouldn't be allowed to communicate with any-one as far as [she] was concerned" and arbitrarily found him guilty of the I/R, although Madrid's charge was devoid of authority.

17. On or about May 21, 2017, upon leaving the chow hall after dinner, Acosta approached Defendant A. Gallion ("Gallion"), who was standing alongside SIS Technician Espinoza, to com-plain about his mail, both regular and legal, being unreason-ably held for excessive amounts of time. Coming and going. Acosta told Gallion that it was of utmost importance because he had filing deadlines to adhere to, and the SIS office was interfering with his access to the courts. Acosta told Gallion that he did not want to write it up, but he would if the issue persisted.

5.

18. On or about May 22, 2017, while leaving the chow hall Acosta encountered STS Technician Espinoza and was informed that Gallion had determined what the issue with his mail was, and that Gallion would get with Acosta later.

19. On or about May 23, 2017, Acosta was summoned to the lieutenants office. Shortly after Acosta arrived, Gallion showed. Gallion informed Acosta that his mail was being held because it was determined that Acosta received a letter saturated with the "liquid designer drug K2". Acosta told Gallion that he did not know anything about K2 being mailed to his person. Gallion then indicated that Acosta would be placed in the Special Housing Unit ("SHU") pending further investigation, and that he might or might not receive an incident report. At that time, Acosta was removed from general population and was placed in segregation.

20. On or about June 10, 2017, Acosta was notified by Lieutenant A. Duarte that he had been charged with introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants or related paraphernalia, not prescribed for the individual by the medical staff; use of the mail for an illegal purpose or to commit or further a greatest category prohibited act; and conduct which disrupts or interferes with the security or orderly running of the institution or Bureau of Prisons (I/R No. 2996264), by Gallion.

21. The next time Gallion made SHU rounds after Acosta was falsely charged, Acosta confronted Gallion. Acosta asked Gallion why would he submit a false report suggesting that Acosta had

attempted to introduce narcotics via the mail. Gallion laughed at Acosta and stated "I'm good ain't I". Acosta told him he was going to write it up. Gallion just smiled and stated, "I'm better than you."

22. On or about June 12, 2017, Acosta learned that Gallion called Inmate Alexis Torres Reg. No. 52656-054 to the lieutenant's office, on or about May 24, 2017, to question him about the introduction of narcotics at USP Tucson, and about what his involvement with Acosta was. Torres stated they were "both of carribean decent and that [they] sat together in the chow hall." (Declaration of Alexis Torres at para. 4). Gallion asked Torres if he knew of any drugs that Acosta was attempting to introduce (Id.). Torres told him he did not (Id.). Gallion attempted to bribe Torres and told him that if he helped he could go to an F.C.I. of his choice (Id.). Gallion stated to Torres that "he needed a statement that said Acosta was waiting for some K2 from a homosexual." (Id.) Torres refused (Id.) Gallion threatened to write Torres up with various code violations, place him in SHU, and transfer him to a prison yard where he would be unsafe if he refused to make the false statements Gallion was soliciting (Id, at para. 5) Torres continued to refuse and was escorted to the SHU (Id.). Gallion talked to Lieutenant Driver and Lieutenant Martinez and told them to make Torres's stay in the SHU miserable (Id., at para. 6). Following Gallion's orders, Torres was placed in a dry cell, where there were no cameras and savagely beaten. He sustained bumps and bruises on his face and ribs, called a "bitch and a faggot", and refused medical attention (Id.). Torres was then moved to "C-range"

(a punitive disciplinary range in USP Tucson's SHU usually utilized to punish inmates in the SHU that engage in further misconduct). After Torres was celled, SHU staff threaten to "be back later" (Id., at para. 7). After about an hour, staff returned and beat Torres again stating, "this is from Gallion" (Id.). The beating was so severe, that Torres was extracted from his cell in a wheelchair (Id.). Lieutenant Driver ordered that Torres be placed in four point restraints. The restraints were applied so tightly that they cut deeply into Torres's wrist and ankles, causing excruciating pain and bleeding (Id.).

23. Gallion ordered the physical abuse of Inmate Alexis Torres simply because Torres refused to make a false corroberating statement that would support the submission of the false claims Gallion made against Acosta.

24. On or about June 15, 2017, Ciufo conducted a hearing of I/R No. 2996264. Acosta submitted a written statement wherein he proffered that he could not be found guilty because he had no knowledge of drugs being mailed; because Narcotic Identification Kits (NIK) tests were unreliable and no laboratory report confirmed the allegations; and because Acosta extremely doubted drugs were mailed in the first place. Against the lack of evidence provided by Gallion, Ciufo found Acosta guilty.

25. On or about June 29, 2017, Acosta mailed a "sensitive" grievance to Western Regional Office complaining about the STS Office and the oppressive problems he was having with its technicians at

USP Tucson. On July 7, 2017, Western Regional Office wrote Acosta back rejecting his complaint stating "the issue you raised is not sensitive. However, we retained your request/appeal according to policy. You should file a request or appeal at the appropriate level via regular procedures."

26. On or about July 12, 2017, Defendant J.T. Shartle ("Shartle") approved the referral of Acosta to the SMU. A referral that was based on the false submissions of Gallion and Madrid. Upon information and belief, Shartle knew that the incident reports that the SMU referral was being predicated upon were false.

27. On or about August 2, 2017, Acosta was notified by Senior Officer W. Smythe that he had been charged with possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon (T/R No. 3014636), by Officer E. Shaw. Acosta informed Officer Smythe that he had "no idea about the weapon", and that he had "nothing to do with this." To the UDC Acosta stated that "it belonged to [his] cell mate."

28. On or about August 10, 2017, Ciufo conducted a hearing of T/R No. 3014636. Acosta proffered that he did not "know anything about the knife" and that he "never saw it before." Acosta requested Inmate Rossetto Reg. No. 95342-198 for a witness. Ciufo denied the request. Rossetto's testimony was relevant because he was Acosta's cell mate and the knife belonged to Rossetto. (Rossetto was simultaneously infracted for the knife, however, his incident report inexplicably

was lost during the investigative stage of the disciplinary process)
Ciufo did, however, allow Acosta to present Officer Smythe as a
witness. Officer Smythe's testimony was relevant because he partici-
pated in the shakedown crew that found the knife. Smythe testi-
fied that "Shaw found [the] weapon in the corner between the wall
and the bedpost.", and that he heard "Rossetto state it was his and
he's taking responsibility." Ciufo capriciously and arbitrarily found
Acosta guilty of the charges against the weight of the evidence
presented by Acosta. In disbelief, Acosta asked Ciufo how she
arrived at that conclusion, and Ciufo stated that Acosta was a
threat to the institution because he was trying to "introduce suboxone."
Although Acosta has never been convicted of introduction of narcotics,
nor was he charged with the introduction of narcotics in the incident
report she was hearing.

29. On or about August 23, 2017, Acosta mailed a complaint for staff
misconduct to the Office of the Inspector General ("OIG"). Initiating
an investigation into the conspiracy of Defendant's Ciufo, Gallion, and
Madrid to illegally confine Acosta in segregation, and after Acosta's
initial attempt to grieve the issue had been fustrated by Western
Regional Office.

30. On or about September 27, 2017, Acosta was notified that he was
being referred for designation to the SMU predicated on the incident
reports discussed herein. Acosta requested Case Manager Collyear
as a staff rep.

31. Sometime in September or October, 2017, Acosta gave a copy of the complaint he filed with the OIG to Defendant Brilo ("Brilo"), while he was doing rounds in the SHU and at Acosta's assigned cell. Acosta complained to him about his mail being detained by the STS office, and the conspiracy between Ciufo, Gallion, and Madrid to fabricate incident reports and otherwise deprive Acosta of due process at his disciplinary hearings in order to justify the need to transfer him to a more restrictive prison.

32. After being briefed of the situation, Brilo did nothing to prevent his staff from carrying out their malicious plan to continue Acosta's confinement.

33. On or about October 3, 2017, Defendant D. Miller ("Miller") conducted a hearing to determine if Acosta met the criteria for SMU designation. Acosta requested the presence of Case Manager Collyear to assist him in the presentation of documentary evidence. Acosta had a right to these as per BOP policy. Miller arbitrarily denied due process when he did not allow Acosta to present a declaration by Inmate Rossetto or allow Acosta to prepare a defense with the assistance of a staff rep.

34. While in SHU at USP Tucson Acosta became severely ill from food poisoning. He suffered from stomach cramps, violent vomiting, diarrhea, sweat bouts, dehydration, and a 102.2° fever. Acosta asked for medical attention and was denied. Acosta asked Gallion for medical help during his SHU rounds, and Gallion stated, "you have nothing coming." Acosta asked the Warden for medical attention and was deliberately refused. Both Defendants had a duty to protect Acosta.

11.

## VI. CAUSES OF ACTION

## Count I

### Plaintiff Was Denied Procedural Due Process in Violation of the Fifth Amendment to the United States Constitution

35. Plaintiff incorporates paragraphs 1 through 34 as though they were stated fully herein.

36. Defendant J. Ciufo deliberately and intentionally violated Plaintiff's Fifth Amendment rights to due process by conspiring with Defendant(s) A. Gallion and D. Madrid to deny Plaintiff procedural due process at all disciplinary hearings identified herein.

37. Defendant A. Gallion deliberately and intentionally violated Plaintiff's Fifth Amendment rights to due process when he conspired with J. Ciufo and denied Plaintiff procedural due process by submitting a false incident report.

38. Defendant D. Madrid deliberately and intentionally violated Plaintiff's Fifth Amendment rights to due process when she conspired with J. Ciufo and denied Plaintiff procedural due process by submitting a false incident report.

39. Defendant D. Miller deliberately and intentionally violated Plaintiff's Fifth Amendment rights to due process when he

did not allow Plaintiff to have a staff rep or present documentary evidence and arbitrarily determined Plaintiff met the criteria for SMU.

## Count II

Defendants Breached Their Duty to Protect Plaintiff in Violation of the Fifth Amendment to the United States Constitution.

40. Plaintiff incorporates paragraphs 1 through 34 as though they were stated fully herein.

41. Defendant J.T. Shartle violated Plaintiff's Fifth Amendment rights to due process when he deliberately and intentionally allowed his staff to conspire against the Plaintiff and keep him in confinement under false pretenses. Even after Plaintiff informed him of the constitutional violations through the grievance system and on OIG complaint that initiated an investigation at USP Tucson.

42. Defendant Brilo violated Plaintiff's Fifth Amendment rights to due process when he breached his duty to protect Plaintiff from his staff. Even after Plaintiff personally handed him a copy of the OIG complaint that detailed the conspiracy between SIS Technicians and the DHO to falsely establish a penalogical interest to confine Plaintiff to the SHU and then transfer him to a facility that mirrors the SHU.

## Count III

Plaintiff was Denied Adequate Medical Care with Deliberate Indifference in Violation of the Eighth Amendment to the United States Constitution.

43. Plaintiff incorporates paragraphs 1 through 34 as though they were stated fully herein.

44. Defendant J.T. Shartle violated Plaintiff's Eighth Amendment right to adequate medical care with deliberate indifference to Acosta's medical needs, although Acosta personally informed him that he was severely ill.

45. Defendant A. Gallion violated Plaintiff's Eighth Amendment right to adequate medical care with deliberate indifference when Plaintiff asked him for medical attention and he stated, "you got nothing coming."

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution; Plaintiff prays for judgment in his favor and damages in his favor against all defendants, and that the Court orders them to pay compensatory and punitive damages in an amount sufficient to compensate him for the physical pain and mental anguish suffered by him due to the deliberate indifference and the intentional misconduct of defendants, which amounts to psycological torture, but in no event less than $330,000, plus fees & costs,

and a preliminary injunction ordering Plaintiff released from the illegal lockdown confinement to a general population, and such additional relief as the Court May deem just and proper.

Dated: April 18, 2018.                    Respectfully Submitted,

Hanoi Acosta # 87406-008

USP Lewisburg

P.O. Box 1000

Lewisburg, PA 17837

Pro se litigant.

Pursuant to 28 U.S.C. § 1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 18, 2018.

Hanoi Barbaro Acosta