FILED ____ LODGED
RECEIVED ____ COPY

APR 23 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

CV18-0216 TUC RM PSOT

HANOI BARBARO ACOSTA,
  Plaintiff,

v.

J.T. SHARTLE, WARDEN, et.al,
  Defendants.

Case No. _____
(to be supplied by Clerk)

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER PURSUANT TO Fed. R. Civ. P., 65(a) and (b).

Plaintiff, Hanoi Barbaro Acosta ("Acosta"), appearing in pro se, moves the Court pursuant to Fed.R.Civ.P. 65, for a temporary restraining order and a preliminary injunction. Acosta asks the Court to grant this motion.

In support thereof Acosta will show the Court the following:

## STATEMENT OF FACTS

Acosta is currently being illegally held in confinement at the Special Management Unit ("SMU"), in Lewisburg, Pennsylvania. Due to the fabrication and submission of false incident reports by the Defendants who collectively conspired to infract, confine, deny medical care, and transfer Plaintiff to a facility that mirrors the SHU. (See, Complaint).

Acosta has been held in continuous confinement since May 23, 2017, that is, 330 days since the date of this filing. The incident report that the SMU placement is predicated on has been expunged. (Ex.A).

1.

Acosta is actually innocent of the remaining incident report that was used to confine him to the SMU (Ex. B). Moreover, the SMU hearing is clearly in violation of due process where a staff rep was requested and arbitrarily denied and a defense was not allowed to be presented (Ex. C).

Therefore, the instant motion for a temporary restraining order follows:

## ARGUMENT

### I. ACOSTA IS ENTITLED TO A TEMPORARY RESTRAINING ORDER WHERE EVERY DAY SPENT IN CONFINEMENT REPRESENTS AN INDIVIDUAL CONSTITUTIONAL VIOLATION.

#### A. Standard of Review

Preliminary injunctive relief is appropriate when the Plaintiff demonstrates that "he is likely to succeed the merits [of the underlying action], that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Resources-Def. Council, 555 U.S. 7, 20 (2008); see also Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). Injunctive relief "is an extraordinary remedy, never awarded as of right." Winter, 555 U.S. at 24.

The principal purpose of preliminary injunctive relief is to preserve the Court's power to render a meaningful decision on the merits

of the case. See, 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). That is, to preserve the status quo pending a determination on the merits. Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009). The standards governing the issuance of temporary restraining orders are "substantially identical" to those governing the issuance of preliminary injunctions. Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

  The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). Speculative injury does not constitute irreparable harm. Id.; Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984). A presently existing actual threat must be shown, although the injury need not be certain to occur. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31 (1969); FDIC v. Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997).

  In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

  Acosta can satisfy the analysis announced in Winter. Therefore, a temporary restraining order and a preliminary injunction should issue. In support thereof, Acosta shows the Court the following:

1. Acosta is likely to Succeed on the Merits of his Bivens Action.

Under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. Id., 403 U.S. at 397. To state a claim a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

Here, Acosta is likely to succeed on the merits of his Bivens Action where the named Defendants, employees of the Federal Bureau of Prisons, sued in their individual capacity, conspired or worked in concert to submit false incident reports, confine to SHU, deny medical care, and transfer plaintiff to a facility that mirrors SHU in violation of the Fifth and Eighth Amendments to the United States Constitution. (See, Complaint).

The incident report that initially removed Acosta from general population and initiated the SMU referral has already been overturned by Western Regional Office and expunged. (See, Ex. A); see also Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641 (1997).

The remaining incident reports that Acosta points to in support of the "conspiracy" allegation are both clearly baseless. Where (1) Acosta's conduct is not in violation of any BOP code (See, Complaint at para. 12-14); see also Canadian Coalition Against the Death Penalty v. Ryan, 269 F. Supp. 2d 1199, 1201, 1203 (D. Ariz. 2003) or (2) there is overwhelming evidence that Acosta is actually innocent of the infraction (See, Complaint at para. 27-28); see also (Ex. B).

Finally, the Ninth Circuit has held that whether good time is lost or not when an inmate is found guilty of a misconduct, prison officials will always violate the Sandin requirement if they find someone guilty

of a misconduct when there is no evidence of guilt. See, Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999) ("plaintiff's due process rights are violated even if plaintiff has demonstrated no cognizable liberty interest" when found guilty of a misconduct and no evidence exists to support that conviction); see also California v. Green, 399 U.S. 149, 187 n. 20 (1970) (Harlan, J., concurring) ("[d]ue process does not permit a conviction based on no evidence"); Thompson v. City of Louisville, 362 U.S. 199, 206 (1960) ("Just as '[c]onviction upon a charge not made would be a sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt.") (quotation, citation, and footnotes omitted)).

    Therefore, Acosta will likely succeed on the merits of the underlying lawsuit. Thus, a TRO should issue.[1]

2. Acosta Will Suffer Irreparable Injury Unless the Injunction is Issued.

    Acosta will suffer irreparable injury unless a temporary restraining order and a preliminary injunction are issued, because every day that Acosta spends confined in the SMU represents a violation of his due process rights. Moreover, a temporary restraining order is warranted because in 104 days from today's date Acosta will be SMU complete, and the issue will become moot and escape review entirely.

    Therefore, Acosta has established a presently existing actual threat. Thus, a TRO should issue.

---

[1] Acosta filed a complaint with the Office of the Inspector General that initiated an investigation into the staff misconduct that forms the basis of Acosta's Bivens Action. Acosta invites the Court to call the OIG and discover the findings of that investigation in support of this motion. Tel: (202) 616-0646.

### 3. The Equities Tip in Acosta's Favor.

The equities tip in Acosta's favor because the Due Process Clause protects prisoners from being deprived of liberty without due process of law. See, Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Moreover, per BOP policy an inmate cannot be confined in segregation unless he poses a serious threat. See, C.F.R. § 541.22; see also Teller v. Fields, 280 F.3d 69, 83 (2d Cir. 2000)(holding that federal rule 28 C.F.R. § 541.22 "contains mandatory language that gives rise to" a liberty interest).

Here, BOP policy Program Statement Special Management Units P5217.02, contains mandatory language that give rise to a liberty interest. P5217.02 states in relevant part:

Unit Team staff will "Inform the inmate that a non-probationary staff member will be available to help him/her compile documentary evidence and written witness statements to present at the hearing. The assisting staff member's responsibility in this role is limited to assisting the inmate in obtaining copies of documents needed, for example, from his/her central file or other reasonably available source(s), or a written statement(s) from other reasonably available inmates or staff." Id., at section 3.(b)(1).

Acosta requested Case Manager Collyear to represent him at the SMU hearing. Acosta wanted to present the Declaration of Leon Rossetto (his former cell mate) and he wanted to submit a written statement. Additionally Acosta asked to review his central file so that he could present corroborating documentation such as DHO packets that showed, for example, that no lab report supported the introduction of drugs report to make a case that the SMU referral was

being arbitrarily considered. However, Defendant D. Miller denied the assistance of a staff rep and arbitrarily denied due process. (See Complaint at para. 33 and 39); (Ex. C).

Acosta has filed an appeal from his illegal SMU placement to the BOP's Central Office asking to be released from confinement (Ex. D). However, it is still pending. Meanwhile, Acosta has shown the Court that his SMU placement violates BOP policy and his procedural due process rights, and that every day spent in confinement represents an actual injury.

Therefore, here the equities tip in Acosta's favor because the Fifth Amendment to the United States Constitution protects prisoners from being deprived of liberty without due process of law. Thus, a TRO should issue.

4. An Injunction is in the Public Interest.

Here, an injunction is in the public interest, because the Defendants' actions to conspire to fabricate false incident reports to justify the continued confinement of Acosta violates the Fifth Amendment to the United States Constitution.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff, 418 U.S. at 556, and while the due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence. Edwards v. Balisok, 520 U.S. at 647; Wolff v. McDonnell, 418 U.S. at 570-571. Moreover, the "some evidence" standard does not apply to original rules viola-

7.

tion report where a prisoner alleges the report is false and retaliatory. Hines v. Gomez, 108 F.3d 265, 268-69 (9th Cir. 1997)

The public interest is best served when an injunction is issued to protect Fifth Amendment rights. In this matter, the public interest is best served by granting Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order because the public has no interest in enforcing unconstitutional confinement of prisoners in the SMU.

Thus, a TRO should issue.

WHEREFORE, for the reasons stated above, this Court should issue a preliminary injunction and a temporary restraining order holding that the Defendants and their officers, agents, employees, and all persons acting in concert or participating with them, restrain from confining Plaintiff in the SMU and release him, effective immediately, to a general population.

Dated April 18, 2018.

Respectfully Submitted,

*Hanol Acosta*
Hanol Barbaro Acosta
Reg. No. 87406-008
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

## CERTIFICATE OF SERVICE

I hereby certify that the original and one copy was mailed to the Clerk of the Court at U.S. Courthouse, Suite 1500, 405 West Congress St., Tucson, AZ 85701-5010 on this 18th day of April, 2018.

By: *Hanol Acosta*
Hanol Acosta #87406-008